**Charles CLEPHAS and Barbara Clephas, Appellants,**

v.

**GARLOCK, INC., Appellee.**

**No. 2003–CA–001276–MR.**

Court of Appeals of Kentucky.

July 30, 2004.

Rehearing Denied Sept. 20, 2004.

Discretionary Review Denied by Supreme Court Aug. 17, 2005.

Kenneth L. Sales, Joseph D. Satterley, Louisville, KY, for appellants.

John K. Gordinier, Berlin Tsai, Louisville, KY, for appellee.

Before COMBS, Chief Judge; DYCHE, Judge; and EMBERTON, Senior Judge.[1]

## OPINION

COMBS, Chief Judge.

Charles Clephas and his wife, Barbara Clephas, appeal the judgment of the Jefferson Circuit Court based on a jury verdict in favor of the appellee, Garlock, Inc., a manufacturer of asbestos products. The Clephases challenge the ruling of the trial court not to exclude the opinion testimony offered by Garlock's two expert witnesses, Dr. Robert Sawyer and Donna Ringo.

The appellants contend that they did not receive a fair trial because the court denied their motion to exclude from evidence the opinions of Dr. Sawyer, which were not provided in Garlock's pre-trial disclosures pursuant to CR[2] 26.02(4). They argue that Ringo's testimony should have been excluded for failing to meet the requisite criteria for reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and adopted in *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995), *overruled in part on other grounds* by *Fugate v. Commonwealth*, Ky., 993 S.W.2d 931 (1999). After a careful review of the record, we agree that the trial court erred in allowing Dr. Sawyer to testify as to his medical opinions regarding Charles's physical condition that were not made available to appellants prior to trial as mandated by the rules of discovery. Therefore, we vacate and remand.

In 1993, the Clephases filed a complaint alleging that Charles, a pipefitter, had contracted asbestos-related diseases as a result of his occupational exposure to gaskets manufactured by Garlock. On August 8, 2000, the trial court entered a Master Order which provided as follows:

> 3. **Expert Witnesses.** Parties shall designate in writing any expert witnesses and provide copies of any report(s) made by such witnesses.
>
> a. **Disclosure deadline.**
>
> Plaintiffs shall disclose their expert witnesses and provide any reports no later than **150 days** before trial. Defendants shall complete any independent medical examinations of the plaintiff, disclose their expert witnesses, and provide any reports no

---

1. Senior Judge Thomas Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Kentucky Rules of Civil Procedure.

later than **105 days** before trial. (Emphasis in original.)

The Clephases' case was scheduled for trial on April 8, 2003. On February 13, 2003—well after the 105–day deadline— Garlock filed its response to the Clephases' interrogatories seeking the identity of the experts Garlock intended to call and their expected testimony. The disclosure contained the following information concerning Dr. Sawyer, a medical doctor and consultant in occupational medicine, and Ringo, an industrial hygienist.

### ROBERT SAWYER, M.D.

Dr. Sawyer may testify, in general, concerning asbestos-related disease and the effects of exposure to asbestos upon persons in occupational settings, including the epidemiology of asbestos-related diseases and the criteria for diagnosis of an asbestos-related disease.

He may also testify regarding the existence or non-existence of any asbestos-related disease in the plaintiffs, including, but not limited to pleural changes, asbestosis, lung cancer, mesothelioma, laryngeal cancer, esophageal cancer and stomach cancer.

He may also testify on whether any asbestos-related disease allegedly suffered by plaintiffs was medically or proximately caused by exposure to asbestos-containing gasket and packing products. He may also testify on the existence of a dose response relationship between exposure and asbestos-related disease.

He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos. He may also testify on the health consequences of smoking.

With respect to particular plaintiffs, he may testify as to review and interpretation of x-ray films, review and interpretation of pulmonary function testing, the nature and extent of any impairment or disability, whether the condition is progressive and whether other disease or conditions are present in plaintiffs.

Dr. Sawyer's testimony will be based on his training, experience, education and review of the medical literature concerning asbestos-related disease.

### DONNA M. RINGO, C.I.H.

Ms. Ringo is a Certified Industrial Hygienist. She may give testimony regarding the level of fiber release, if any, from gasket and packing products in the occupational setting. She may testify regarding threshold limit values and permissible exposure levels as promulgated by private organizations and government agencies. She may testify as to work practices regarding various types of occupations using products that contained asbestos. She may testify as to the applicability of the OSHA and EPA's guidelines as they relate to various types of products including gaskets and packings. She may testify as to the exposure that may result from the use of other types of asbestos products

She may complete asbestos exposure assessments on individual plaintiffs.

After receiving this information, the Clephases requested that Garlock disclose the experts' opinions that specifically addressed Charles's medical condition and/or his working environment. They also sought times and dates to depose the experts. Garlock failed to provide any further information; the Clephases were required to file a motion to compel Garlock to produce its expert witnesses for deposition. On March 4, 2003, with trial a month away, the court ordered Garlock to produce its expert witnesses for deposition

within twenty days. Following the entry of that order, the Clephases were able to take Ringo's deposition; however, Dr. Sawyer was never made available for deposition.

At trial, the appellants moved for the exclusion of Dr. Sawyer's opinions that had not been previously disclosed to them. They argued that the exclusion of the expert's opinions was warranted because: (1) Garlock's CR 26.02(4)(a)(i) disclosure was vague and lacked any substantive opinions directly regarding Charles and (2) they were denied the opportunity to learn of his opinions by deposition in violation of the court's order compelling such discovery.

The trial judge (different from the judge who had presided over the discovery phase) denied the motion and permitted Dr. Sawyer to testify without restriction. Dr. Sawyer's opinions included his diagnosis of Charles's physical condition as well as his opinion on causation. Although none of this material had ever been disclosed to the Clephases, Dr. Sawyer nonetheless was permitted to relate his expert opinions to the jury. Contrary to the medical opinions expressed by Charles's treating physician, Dr. Sawyer testified that in his opinion, Charles did not suffer from asbestosis. He further testified that after reviewing the results of pulmonary functions tests, he believed that Charles had some "mild" obstructive disease due to asthma and smoking cigarettes but that he had no condition caused by exposure to asbestos.

On cross-examination, Dr. Sawyer testified that his review of x-rays formed the basis of his opinion that Charles had no asbestos-related disease. He admitted that he had seen those x-rays for the first time the previous evening and that he had not formed an opinion with respect to his medical diagnosis until the very morning on which he testified.

The Clephases also asked the trial court to exclude the testimony of Donna Ringo in its entirety, arguing that her opinions were neither relevant nor reliable. Following a *Daubert* hearing, the trial court initially agreed with the Clephases and ruled her testimony inadmissible. However, after listening to her avowal testimony, the court changed its ruling and permitted the jury to hear her opinions. Ringo testified that the amount of fibers released when removing gaskets containing asbestos from pipes was no greater than that found in the air in general.

The jury returned its verdict absolving Garlock of any liability to the Clephases. After a final judgment was entered, the Clephases moved for a new trial. The motion was overruled on June 11, 2003. This appeal followed.

■ The Clephases argue that the trial court abused its discretion in allowing Dr. Sawyer to testify to opinions not disclosed to them prior to trial. They object to the fact that the information contained in Garlock's CR 26.02(4)(a) disclosure was wholly generic in nature; that it failed to mention Charles directly or his condition with any specificity; and that it failed to satisfy the requirements of the discovery rule. They contend that exclusion of the expert's opinions was required because of Garlock's failure to produce Dr. Sawyer for deposition in clear violation of the order of the trial court. The overall impact of the court's refusal to exclude the evidence "resulted in an inherently unfair 'trial by surprise'." (Appellants' reply brief, p. 3).

In response, Garlock disputes as untrue the Clephases' complaint that they were unable to depose Dr. Sawyer. Garlock claims that it did provide the Clephases with two dates during the week prior to trial (April 1 and April 3) on which to take a telephonic deposition of Dr. Sawyer. It

also contends that the Clephases' attorney was "very familiar with Dr. Sawyer's testimony" and that he had "deposed and cross-examined Dr. Sawyer on numerous occasions before." (Appellee's brief, p. 9.) Garlock does not cite to the record in making these assertions. Furthermore, our review of the record reveals no evidentiary support for these representations. In their reply brief, the Clephases' attorney denied that Dr. Sawyer was ever made available for deposition at any time before trial (telephonically or otherwise); he added that he had never deposed the doctor.

◼ Our standard of review of a trial court's ruling as to admitting or excluding evidence is limited to determining whether the trial court abused its discretion. *Goodyear Tire and Rubber Co. v. Thompson,* Ky., 11 S.W.3d 575, 577 (2000).

> The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*Id.,* at 581, *citing Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999). Under the circumstances presented in this case, we conclude that the court's admission of Dr. Sawyer's previously unrevealed opinions did indeed result in an unfair proceeding and that, therefore, it constituted an abuse of discretion.

Our civil rules provide for a liberal discovery process. Case law has repeatedly reinforced the policy underlying pretrial discovery, holding that it:

> simplifies and clarifies the issues in a case; eliminates or significantly reduces the element of surprise; helps to achieve a balanced search for the truth, which in turn helps to ensure that trials are fair; and encourages the settlement of cases.

*LaFleur v. Shoney's, Inc.,* Ky., 83 S.W.3d 474, 478 (2002); *see also, Commonwealth,*

*Dept. of Highways v. Frank Fehr Brewing Company,* Ky., 376 S.W.2d 541 (1964).

CR 26.02(4), the rule governing disclosure of expert witnesses, provides as follows:

> Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph (1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> (a)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

It is apparent that Garlock's disclosure relating to Dr. Sawyer did not comply with either the letter or the spirit of our discovery rules. Dr. Sawyer acknowledged that he had no opinions about Charles Clephas's medical condition at the time Garlock made its CR 26.02(4)(a) disclosure identifying him as an expert witness in this case. After Garlock revealed his identity, Dr. Sawyer did not receive any information to review about Charles until the middle of March 2003. It was not until the evening before his trial appearance that he first examined the x-rays of Charles's lungs. Dr. Sawyer acknowledged that he did not formulate a medical opinion relating to Charles's physical condition and/or its causation until a few hours before his trial testimony.

◼ A generalized statement outlining a broad subject matter about which an expert *may* testify does not sufficiently apprise the other party of the information needed to prepare for trial as contemplat-

ed and mandated by the notice requirements of CR 26.02(4)(a). The discovery of the substance of an expert witness's expected testimony is essential to trial preparation. In this case, Garlock's persistent pattern of noncompliance with discovery orders undoubtedly resulted in prejudice to the Clephases. Garlock failed to produce its expert for deposition although ordered to do so; additionally, Garlock waited until the trial had commenced before providing its expert with the materials necessary for him to evaluate in order to form an opinion. Shoddy trial tactics cannot be tolerated in blatant violation of the "rules of the game." *See, Charash v. Johnson,* Ky.App., 43 S.W.3d 274 (2000); and *Jefferson v. Davis,* 131 F.R.D. 522, 524, (N.D.Ill.1990), in which the court observed that inadequate discovery (similar to that involved in the case before us) "produces in acute form the very evils that discovery has been created to prevent." We conclude that the trial court erred in admitting Dr. Sawyer's undisclosed opinions.

■ The Clephases also argue that the trial court erred in admitting Ringo's testimony. As an industrial hygienist, Ringo monitors the levels of hazardous substances in workplace environments to insure compliance with the standards set by OSHA and other government agencies. Her work has also included conducting surveys to determine the amount of asbestos fibers released under controlled conditions.

The Clephases argue that Ringo's studies were not relevant because they were not performed under conditions substantially similar to those which resulted in Charles's exposure to asbestos during his long career as a pipefitter. They also contend that her surveys were not reliable pursuant to the criteria set out in *Daubert, supra; i.e.,* the studies on which she based

her opinions were not published, and they had not been subject to peer review. Additionally, Ringo could point to no published articles in the scientific community recognizing or indicating acceptance of her methodology: wetting the asbestos material before testing the amount of fibers released.

This issue also is reviewed under the standard of abuse of discretion. *Toyota Motor Corporation v. Gregory,* Ky., 136 S.W.3d 35 (2004). The issue of reliability of the evidence was not a clear matter and really was a rather close call. It is evident from the trial court's conflicting rulings that it labored in performing its gate-keeping function. After conducting a *Daubert* hearing, the court initially ruled to exclude Ringo's testimony because her studies had not been conducted under conditions that were substantively similar to those experienced by Charles. It then reversed itself and permitted Ringo to testify. Although they were not performed under conditions which simulated those experienced by Charles, Ringo's surveys and studies were relevant to Garlock's defense that its product was not hazardous. The trial court reasoned that any difference between Charles's particular work environment and the milieu where Ringo's studies were conducted properly pertained to the weight to be given to her testimony rather than its admissibility. Because many of the criteria set forth in *Daubert* were absent, the court would have been well within its discretion even if it had adhered to its initial ruling excluding Ringo's testimony. Nevertheless, the criteria are neither indispensable nor exhaustive. *Id.* Rather, "the test for reliability is flexible." *Johnson v. Commonwealth,* Ky., 12 S.W.3d 258, 264 (1999). Thus, we are not persuaded that the trial court abused its discretion in its ultimate decision to admit Ringo's testimony.

In summary, we hold that the trial court abused its discretion only in its admission of the undisclosed medical and causation opinions of Dr. Sawyer. Because his opinions seriously undermined the opinions expressed by the Clephases' expert, we hold that the error was sufficiently prejudicial to entitle them to a new trial. On remand, the trial court will retain the discretion to decide once again the issue of whether to admit or to exclude Ringo's testimony.

The judgment of the Jefferson Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this opinion.

ALL CONCUR.