RENDERED: JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0884-MR
AND
NO. 2019-CA-1115-MR

REBA SLONE        APPELLANT/CROSS-APPELLEE

APPEAL AND CROSS-APPEAL FROM FLOYD CIRCUIT COURT
v.     HONORABLE JOHNNY RAY HARRIS, JUDGE
ACTION NO. 14-CI-00270

EQT PRODUCTION COMPANY     APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING

** ** ** ** **

BEFORE: MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE: Reba Slone brings Appeal No. 2019-CA-0884-MR and EQT
Production Company (EQT) brings Cross-Appeal No. 2019-CA-1115-MR from an
August 3, 2019, judgment of the Floyd Circuit Court pursuant to a jury verdict in
favor of EQT upon all claims. We affirm both the appeal and cross-appeal.

This appeal involves the leakage of hydrogen sulfide ($H_2S$) from a gas well owned by EQT and located in Floyd County, Kentucky. It is uncontroverted that at certain concentrations $H_2S$ poses a danger to human health and life.

Slone resided in a mobile home located between 300 feet to 600 feet from the gas well owned by EQT. Around April 2013, EQT discovered that the well was leaking $H_2S$; at trial, EQT introduced evidence that the leakage from the well was caused by mine subsidence. Nevertheless, sometime in May 2013, EQT informed Slone of the leak and relocated her to a motel. EQT finally killed the well in June 2013 and eventually plugged the well in November 2013.

On April 10, 2014, Slone filed a complaint against, *inter alios*, EQT in the Floyd Circuit Court.[1] Slone claimed to have suffered myriad adverse health effects caused from the well's release of $H_2S$ near her residence and that EQT breached numerous duties of care owed to her. In particular, Slone alleged:

> 5. On May 26, 2013, [Slone] was severely injured as a result of exposure to leaking gas from EQT Production Company's gas well located near Kentucky Route 777 at 3532 Turkey Creek, McDowell, Kentucky, wherein [Slone] resided.
>
> . . . .
>
> 8. That in addition to the duty of extraordinary care, the Defendant, EQT Production Company also, at the time of the incident complained of herein, owed a duty of ordinary care to individuals, including the Plaintiff, Reba Slone, who resided on

---

[1] Reba Slone also named as a defendant North Star Mining, Inc., but the parties settled prior to trial.

-2-

the property through which EQT Production Company's gas wells and pipelines are situated and/or adjoining.

9.  The Defendant, EQT Production Company was under a duty of care to construct and maintain their gas distribution system so as to prevent the escape of gas therefrom.  However, they so carelessly and recklessly allowed the gas well and/or the lines running from the gas well in the vicinity of Reba Slone's home to become and remain in such a state of disrepair that EQT Production Company's natural gas escaped from their gas well and/or the lines running therefrom.

10.  That the incident set out in paragraph 5 above was the result of the negligent and/or grossly negligent acts of the Defendant, EQT Production Company or their employees, agents or servants, said negligent and/or grossly negligent acts including, but not being limited to, the following breaches of their duty of care owed to the Plaintiff, Reba Slone and to others similarly situated:

> A.  EQT Production Company's failure to drill and/or install their well in a safe manner such that their natural gas could not escape from their gas well and/or the lines therefrom and cause injury or death to others and/or damage to the property of others.

> B.  EQT Production Company's failure to maintain, monitor, repair and/or inspect their gas wells and/or the lines running therefrom so as to confine their natural gas within their gas wells and/or within the lines running therefrom to ensure that their gas well and/or lines running therefrom were not in such a state of disrepair that gas could escape from them, posing a potentially hazardous condition to the

individuals who live on the property through which those wells and/or gas lines are situated.

11. That one or more of the individual acts of negligence and/or gross negligence committed by the Defendant, EQT Production Company was the direct and proximate cause of Reba Slone's exposure to gas and the severe permanent bodily injuries suffered by the Plaintiff, Reba Slone.

12. That on the date of the subject accident, Defendant, EQT Production Company knew, or in the exercise of reasonable care, should have known in the exercise of ordinary care that the failure to properly drill, install, maintain, monitor, repair and/or inspect their gas wells and/or the lines running therefrom, would cause leaks therein, creating a condition where gas might escape from their wells and/or their pipelines and leak posing a grave risk to any persons and/or property nearby. As a result, the Defendant, EQT Production Company negligently and/or in a grossly negligent manner failed to discover and repair such leaks in their gas well and/or lines running therefrom.

13. That a direct result of the negligence and/or gross negligence of Defendant, EQT Production Company in drilling, installing, maintaining, monitoring, repairing and/or inspecting their gas wells and/or the lines mining therefrom, Plaintiff, Reba Slone sustained serious and permanent bodily injuries which have caused her to suffer pain, suffering, mental anguish and inconvenience and will continue to suffer such pain, suffering, mental anguish and inconvenience in the future.

14. That a direct result of the negligence and/or gross negligence of Defendant, EQT Production Company in drilling, installing, maintaining, monitoring,

repairing and/or inspecting their gas wells and/or the lines running therefrom, Plaintiff, Reba Slone has incurred, and will incur in the future, medical expenses and physician expenses.

15. That the acts of the Defendant, EQT Production Company which caused [Slone]'s exposure to gas complained of herein, constitute a wanton, malicious, and reckless disregard for the life, safety, and property of the Plaintiff, Reba Slone, and as such the [Slone] is entitled to punitive damages.

16. In total disregard of the duty owed to [Slone], and other members of the public, the Defendant, EQT Production Company, their agents, servants or employees, created and exacerbated a dangerous, extremely volatile, ultra-hazardous and potentially deadly condition due to their failure to properly monitor, detect, remedy, and warn [Slone] and others of the danger associated with escaping gas. These acts and failures to acts by Defendant, EQT Production Company, their agents, servants or employees, were grossly negligent and reckless, constituted a disregard for the rights, safety and position of others, including [Slone], and clearly exhibited a failure to exercise the degree of care required under the circumstances. These careless, negligent, reckless and unlawful acts and failures to act of the Defendant, EQT Production Company, their agents, servants or employees, were a substantial factor leading to the gas leak in question that resulted in the injuries and damages to [Slone] complained of herein.

Complaint at 2-6.

A jury trial was held in July of 2018, and the jury returned a unanimous verdict in favor of EQT. Slone filed a motion for a judgment

notwithstanding the verdict and a motion for a new trial. Both motions were ultimately denied by the circuit court by order entered September 12, 2018. These appeals follow.

APPEAL NO. 2019-CA-0884-MR

Slone initially contends that the circuit court committed reversible error by failing to give the jury a missing evidence instruction. Slone points out that EQT employees were instructed to take $H_2S$ gas measurements twice daily after discovering the leak. According to Slone, these $H_2S$ gas measurements were taken at Slone's mobile home and at the wellhead. Slone argues that the measurements were recorded by EQT, but EQT failed to produce the record of the gas measurements taken before the well was killed in June 2013. Slone points out that EQT offered no explanation for the missing record. Slone believes the record of the daily $H_2S$ measurements was pivotal evidence that could have demonstrated the concentration of $H_2S$ she was exposed to by the leaking well.

To be entitled to a missing evidence instruction, a party must demonstrate:

> (1) the evidence is material or relevant to an issue in the case; (2) the opponent had "absolute care, custody, and control over the evidence;" (3) the opponent was on notice that the evidence was relevant at the time he failed to produce or destroyed it; and (4) the opponent, "utterly without explanation," in fact failed to produce the disputed evidence when so requested or ordered.

-6-

*Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 731 (Ky. 2020) (quoting

*Univ. Medical Cent. Inc. v. Beglin*, 375 S.W.3d 783, 792 (Ky. 2011)). It is

unnecessary to present to "direct and conclusive evidence of intentional and bad

faith destruction" of the missing evidence. *Beglin*, 375 S.W.3d at 789. However,

where the proof demonstrates that the missing evidence was lost because of mere

negligence, fire, natural disaster, or in the normal course of business, a missing

evidence instruction is inappropriate. *Id.* at 791. And, we review the trial court's

decision for an abuse of discretion. *Id.* at 791-92.

It is axiomatic that a missing evidence instruction is only appropriate

where there is some proof at trial that evidence is actually missing. Here, Slone

failed to introduce evidence at trial demonstrating that a document or documents

existed recording daily $H_2S$ gas measurements taken by EQT after the well started

leaking. In her brief, Slone cites to the deposition of the past EQT Senior Safety

Director, Jerry Hamilton, as proof that a document existed recording the daily $H_2S$

measurements. In his deposition, Hamilton does state that he created such a

document. Yet, Slone failed to produce him as a witness at trial, introduce into

evidence the relevant portions of his deposition, or introduce relevant portions of

his deposition by avowal. In fact, EQT only entered Hamilton's deposition in the

record by avowal to preserve its objection to another evidentiary ruling by the trial

court. Additionally, numerous EQT employees testified by avowal that their

-7-

respective H2S gas monitors never alarmed while around Slone's residence; thus, H2S gas was not in high enough concentrations to pose a danger at the time to the employees that such took measurements. In the final analysis, the trial court possessed discretion as to the missing evidence instruction, and we are simply unable to conclude that the trial court abused its discretion by refusing to give a missing evidence instruction to the jury.

Slone next asserts that the trial court committed reversible error by admitting the testimony of EQT expert, George Schewe, concerning an air model that illustrated the dispersion of H2S leaking from the well. Slone particularly argues that H2S was documented at the wellhead at a concentration in excess of 500 ppm. Despite such measurement, Slone states that Schewe "arbitrarily used 100 ppm of H2S as the concentration of gas emanating from the wellhead . . . to build his model." Slone's Brief at 10. Slone maintains that it was clear error to introduce Schewe's air model and his opinion concerning H2S concentrations at Slone's residence.

It is well-established that "[t]he court's role is not to judge the correctness of the expert's conclusions; that assessment is for the jury." *Futrell v. Commonwealth*, 471 S.W.3d 258, 282 (Ky. 2015). Rather, the trial court is tasked with determining whether a witness is qualified to give expert testimony per a

*Daubert* analysis.[2]  Kentucky Rules of Evidence (KRE) 702; *Turner v. Commonwealth*, 544 S.W.3d 610, 616 (Ky. 2018).

In this case, Slone does not attack Schewe's qualifications to offer expert testimony.  Rather, Slone alleges that Schewe utilized an incorrect $H_2S$ concentration at the wellhead, and upon this basis, Schewe's opinions should have been excluded.  We disagree.  The $H_2S$ concentrations at the wellhead did measure 500 ppm; however, the evidence did not establish that the $H_2S$ concentrations at the wellhead remained at 500 ppm.  Moreover, the correctness of Schewe's opinions, including the air model, goes to the weight of same, and may be properly challenged by cross-examination and by Slone's own expert's conflicting opinions.  Therefore, we do not conclude that the trial court committed reversible error by admitting the testimony of Schewe at trial.

Slone also argues that the trial court committed reversible error "by allowing evidence of subsidence as a superseding intervening cause."  Slone's Brief at 11.  Specifically, Slone maintains:

> On the hillside above the subject well, there had been some subsidence of the ground – commonly referred to as a "slip."  EQT sought to introduce evidence of this slip and testimony of prior underground mining in the vicinity to infer that the subsidence caused a pipe to break and this enabled $H_2S$ to leak into the atmosphere.  Prior to trial, [Slone] made a motion in-limine to exclude any suggestion or evidence that any other person or event

_____

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

was responsible for the H₂S gas leak. . . . The Court, however, withheld ruling on this issue. To do so was an error, and it prejudiced [Slone].

An act or event cannot be a superseding cause if the original actor could have reasonably foreseen the resultant injury. Here, even if [EQT] could have shown that the H₂S leak was caused by land subsidence, it could not seriously argue that such was not foreseeable. Hillside subsidence in Eastern Kentucky is not an act or an event that is "extraordinary and unforeseeable." To the contrary, [EQT] was well aware of mining in the area and knew that hillside subsidence could impact its gas well. In fact, the possibility of land subsidence was just one more reason why EQT should have plugged its well prior to the 2013 leak. . . .

By withholding ruling on this issue, the Court allowed [EQT] to repeatedly question witnesses and introduce irrelevant and improper evidence throughout the trial to support the suggestion that it should be relieved of liability for the 2013 H₂S leak because the "real" cause was subsidence caused by mining. . . . The Court ultimately rejected [EQT's] proposed instruction allowing the jury to find this slip to be a superseding intervening cause relieving [EQT] of liability for [Slone's] exposure; but the Court only did so at the end of the trial after the jury had heard evidence of how the slip had been the cause of the leak.

Slone's Brief at 11-13 (citations omitted).

Relevant evidence is generally admissible under KRS 402. Relevant evidence is defined in KRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But, relevant

evidence may be excluded if the probative value of the evidence is outweighed by undue prejudice per KRE 403.

An appellate court's review of evidentiary issues requires a two-step analysis. Initially, our review of the trial court's ruling to admit or exclude evidence is limited to an abuse of discretion. *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky. App. 2004). An abuse of discretion occurs when the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). If the trial court abuses its discretion by admitting or excluding evidence, we must then determine whether said error constitutes harmless error or reversible error. To constitute reversible error, the substantial rights of a party must have been affected. KRE 103(a).

In this case, evidence of mine subsidence occurring at the well was relevant. This evidence offered an explanation for why a pipe cracked at the well allowing $H_2S$ to leak and also refuted Slone's evidence that EQT's carelessness caused the leak at the well. Upon the whole, we simply do not believe that the trial court abused its discretion by admitting evidence of mine subsidence.

Slone next asserts that the trial court committed error by denying her motion for a directed verdict upon the issue of EQT's liability. In particular, Slone maintains "that a legally-cognizable duty existed and that duty had been breached

-11-

by [EQT] was established as a matter of law because [EQT] failed to plug the subject well . . . as mandated by Kentucky law [805 Kentucky Administrative Regulations (KAR) 1:070]." Slone's Brief at 18. Slone points to testimony that EQT stopped production at the well on February 2, 2011, and had no plans to restart production at the well. Per 805 KAR 1:070, Slone argues that EQT should have plugged the well after ceasing production, and its failure to do so constituted a violation of 805 KAR 1:070 that entitled her to damages. More particularly, Slone argues:

> [W]hen the duty violated is one established by law, and the harm is the type intended to be prevented by the statute or regulation, then causation is not a matter of factual dispute – it is established as a matter of law. Therefore, in such cases, unless a question is presented as to the comparative fault of a plaintiff or some other person, a plaintiff is entitled to a directed verdict on liability because there is no factual issue regarding causation for the jury to decide. In the case at bar, it was undisputed that [EQT] violated 805 KAR 1:070 and that this was the sole legal cause of [Slone]'s exposure to $H_2S$ gas. In addition, the statute here was obviously enacted to protect the public and prevent the escape of gas. Thus, in this case [Slone] was undeniably entitled to a directed verdict on liability at the close of the evidence.

Slone's Brief at 20 (citations omitted). Additionally, Slone argues that "even if no statute or regulation had been violated, the proof was nevertheless uncontroverted that [EQT's] actions were the sole legal cause of [Slone's] harm." Slone's Brief at 20.

The Kentucky Supreme Court has instructed that a "trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Jewish Hosp. & St. Mary's Healthcare Inc. v. House*, 563 S.W.3d 626, 630 (Ky. 2018) (quoting *Argotte v. Harrington*, 521 S.W.3d 550, 554 (Ky. 2017)). It must be recognized that "[d]irected verdicts for plaintiffs in negligence cases are rare, but when the undisputed evidence points unerringly to negligence of the defendant as the cause of the accident, a directed verdict for the plaintiff is proper." *Droppelman v. Willingham*, 169 S.W.2d 811, 814 (Ky. 1943). Upon appellate review of the denial of a directed verdict for a plaintiff, we must determine whether under the evidence as a whole a reasonable jury could not find in favor of defendant. Kentucky Rules of Civil Procedure (CR) 50.01. And, to prevail upon a negligence *per se* claim, a "violation [of the statute] must have been a substantial factor in causing the result." *McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224, 228 (Ky. 2015) (quoting *Hargis v. Baize*, 168 S.W.3d 36, 46 (Ky. 2005)).

In the case *sub judice*, EQT introduced evidence that Slone was not exposed to a sufficient concentration of $H_2S$ to have caused her injury. Additionally, EQT introduced evidence that many of Slone's alleged injuries were, in fact, chronic conditions for which she had previously sought medical treatment. In short, EQT introduced a sufficient quantum of evidence from which a

reasonable juror could find that the release of $H_2S$ from the well was not a substantial factor in causing injury to Slone. *See Estate of Moloney v. Becker,* 398 S.W.3d 459, 462 (Ky. App. 2013). Although Slone alleged violation of a regulation constituted negligence *per se*, Slone's alleged injury must still have been caused by such violation. *See McCarty*, 476 S.W.3d at 228. Consequently, we believe the trial court properly denied Slone's motion for directed verdict.

Slone further contends that trial counsel erred by denying his motion for new trial based upon misconduct by EQT's attorney. During closing argument, Slone points out that EQT's attorney made the following statements:

> The proof was, that after this leak occurred – "What did EQT do?" It had **monitoring**. It had people with **monitors** near the well <u>and</u> near the house.

Slone's Brief at 14 (emphasis added). According to Slone, these statements were highly prejudicial because the trial court had excluded evidence of hand-held gas monitoring conducted by EQT employees and evidence concerning the absence of an alarm that would indicate the presence of $H_2S$ in higher concentrations. Slone believes that these statements improperly "reinforce[d] to the jury the false impression that daily continual monitoring had [shown] . . . [she] had not been exposed to an $H_2S$ gas." Slone's Brief at 14. As such, Slone maintains that she was entitled to a new trial.

-14-

Under CR 59.01(b), a new trial may be granted by the trial court based upon the misconduct of an attorney. It may constitute misconduct for an attorney during closing argument to refer to facts that were excluded by the trial court. *Jefferson v. Eggemeyer*, 516 S.W.3d 325, 340 (Ky. 2017). Where the trial court gives an admonition to the jury to disregard the improper facts alluded to during opening or closing argument, "the jury is deemed to follow an admonition unless it can be shown that there was an 'overwhelming probability that the jury' could not 'and there is a strong likelihood that the effect of the inadmissible evidence would be devastating . . . .'" *Id.* (citation omitted).

In this case, the record reveals that the trial court gave the jury an admonition, and there is no showing from the record in this case of an overwhelming likelihood the jury failed to follow the admonition or that the effect of EQT attorney's statements were devastating. *See id.* Rather, the attorney for EQT made an isolated reference during closing argument to gas monitoring near Slone's home. Although each case is reviewed based upon its unique facts, it is generally accepted that "[a]n isolated instance of improper argument . . . is seldom deemed prejudicial." *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 631 (Ky. App. 2003). Upon the whole, we do not believe the trial court erred by denying the motion for new trial based upon the improper closing argument of counsel for EQT.

Slone lastly argues that she was entitled to a new trial based upon another instance of misconduct by counsel for EQT. In particular, Slone states that the trial court excluded evidence concerning her alleged withdrawal from pain medicine as a cause of her physical symptoms. Nevertheless, under cross-examination, Slone argues that EQT improperly questioned Dr. Kevin Trangle "about pain medication withdrawal." Slone's Brief at 17. Slone believes that counsel for EQT committed misconduct by questioning Dr. Trangle about a matter that was previously excluded by the trial court.

We reviewed the video record as cited by Slone for the trial court's ruling that excluded evidence of her withdrawal from pain medication. At that hearing, Slone did request that such evidence be excluded at trial. But, the trial court did not rule upon the motion; rather, the court deferred a ruling until it could review additional medical records. The record later reveals that the issue of exclusion of such evidence was not brought to the trial court's attention again until after Dr. Trangle's testimony during trial. Consequently, we cannot say that counsel for EQT engaged in misconduct by his cross-examination of Dr. Trangle. In sum, we are of the opinion that the trial court did not commit reversible error warranting a new trial.

CROSS-APPEAL NO. 2019-CA-1115-MR

Considering our resolution of the direct appeal, the contentions of error raised by EQT are moot.

For the foregoing reasons, the Judgment of the Floyd Circuit Court is affirmed in Appeal No. 2019-CA-0884-MR and Cross-Appeal No. 2019-CA-1115-MR.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Timothy C. Bates
Hindman, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

John Kevin West
Columbus, Ohio

Candace B. Smith
Lexington, Kentucky