RENDERED:  DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1307-MR

JORDAN RINGHAM                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 19-CI-005508


AIMEE GAMES                                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND EASTON, JUDGES.

CETRULO, JUDGE:  This is an appeal from a jury verdict and judgment of the
Jefferson Circuit Court.  The underlying action arose out of a car accident for
which the jury awarded no damages to Appellant Jordan Ringham ("Ringham") for
claimed injuries.  On appeal, Ringham asserts that several evidentiary rulings
resulted in an unfair trial.  We affirm.

## FACTUAL BACKGROUND

Ringham was driving through a parking lot in Louisville when Appellee Aimee Games ("Games") backed up her vehicle, striking Ringham's vehicle. Ringham filed suit, claiming an eardrum perforation and injuries to her spine from the accident. Games denied negligence and further argued, through expert testimony, that the perforation and spinal injuries were not caused by the car accident.

Several motions *in limine* were filed, and several objections and motions were made throughout the trial held in October 2022. At the conclusion of the evidence, the jury rendered a threshold verdict, pursuant to Kentucky Revised Statute ("KRS") 304.39-060, finding that Ringham did not sustain $1,000.00 in reasonably needed medical services and/or sustain a permanent injury as a direct result of the automobile accident.[1] The trial court entered judgment consistent with the jury verdict, and this appeal followed. On appeal, Ringham asserts that the trial court made several incorrect evidentiary rulings that cumulatively resulted in an unfair trial.

---

[1] "[T]here are two distinct no-fault threshold questions which under the appropriate fact situations should be addressed by the jury. Only if a jury answers that at least one of the criteria has been met should it be instructed to determine the appropriate compensatory damages. However, should the jury find that neither threshold has been met, then it should be instructed to cease further deliberations." *Combs v. Stortz*, 276 S.W.3d 282, 289 (Ky. App. 2009). Here, the jury did not find either threshold had been met.

-2-

## STANDARD OF REVIEW

"[T]he standard of review of a trial court's evidentiary rulings is an abuse of discretion." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 725 (Ky. 2009) (citation omitted). In analyzing the abuse of discretion standard, we note that the trial court is empowered to make its own decision "within a range of permissible decisions," and such decisions are generally entitled to deference on appeal. *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004) (internal quotation marks and citation omitted).

## ANALYSIS

### A.     Video Clips During Opening Statement

Ringham first asserts error regarding the defense use of segments of expert witness testimony during the opening statement. The defense counsel prefaced the video clip with "and Dr. Potts gave testimony in this case, and I will show you just a small piece of what the evidence will be." Ringham complains that only approximately seven minutes of clips from an hour and a half of testimony were shown to the jury during opening statements. Ringham's attorney objected during the trial, but the trial court overruled the objection.

In *Morgan v. Scott*, 291 S.W.3d 622, 635 (Ky. 2009), counsel played portions of a physician's testimony in closing argument. The court did not conduct

a hearing regarding the video snippets and did not admonish the jury that there should be no special emphasis on portions of the testimony played during closing. *Id*. at 635-36 (citation omitted). On appeal, the Supreme Court found that not holding a "snippet hearing" was error, although it was deemed harmless. *Id*. at 637. Both parties reference *Morgan* in their briefs.

Ringham asserts that *Morgan* required the trial court to conduct a hearing and thus, failure to do so was prejudicial and required reversal. Games responds that Ringham at no time requested a hearing nor an admonition to the jury such as was recommended by the *Morgan* Court. Moreover, here, the trial court had conducted hearings prior to trial and found the testimony of Dr. Potts to be admissible. Games asserts there was no reason for the trial court to conduct another hearing to insure that the snippets were admissible, and further, Ringham could have played any portion of the testimony in her opening.

In *Morgan*, our Supreme Court held that a trial court has the discretion to determine whether counsel may play portions of videotape depositions during closing argument. *Id.* at 636 (citation omitted). Before it permits a party to play testimony during closing, the trial court must review the testimony to ensure "that the segments presented to the jury are not overly lengthy, do not overly emphasize one party's case, and are not a misrepresentation of the witness' testimony." *Id.* (citation omitted).

-4-

Nevertheless, the Court in *Morgan* ruled that failure to conduct a hearing was harmless error. *Id.* at 637. Similarly, here, we find any error in that regard was harmless. Ringham also maintains that use of snippets during opening statements creates even more risk of prejudice because the snippets of anticipated testimony may not make it into evidence. This concern has merit in the typical case and supports the trial court conducting a hearing to preclude any such prejudicial or improper admission. However, here, the trial court had conducted a lengthy pretrial hearing concerning the testimony of Dr. Potts.

As such, our reading of *Morgan* reveals no abuse of discretion in this instance for failure to conduct a second hearing to review the snippets during the early stages of the trial. Depositions and anticipated testimony are frequently referred to during opening statements as counsel inform the jury of their view of the case and the forthcoming evidence. If the defense had played some snippet of testimony that had been ruled inadmissible, there could be error. However, that did not happen here. Permitting snippets of testimony that had already been reviewed and found admissible by the trial court does not constitute an abuse of discretion by the trial court. Further, while an admonition, as *Morgan* suggested, might have been appropriate, Ringham did not request one.

**B.**     **The Testimony of Dr. Potts**

Second, Ringham argues that the trial court erred by permitting certain portions of Dr. Potts's testimony to be admitted to the jury. Ringham conducted a discovery deposition of Dr. Potts the day before his scheduled testimonial deposition to determine the extent of his anticipated trial testimony. At the testimonial deposition, Dr. Potts agreed that secondary gain could be a relevant consideration in a physician's evaluation.

> Q.     In your opinion, is secondary gain a relevant
> consideration for you or any other physician when giving
> a causation opinion, certainly in [] Ringham's case with
> regard to the 11/19/18 accident where she's claiming –
> with her claims and seeking monetary gain in this
> lawsuit? Is that a relevant consideration in your opinion?
>
> A.     Yeah.

However, Dr. Potts did not disclose that opinion the day before during the discovery deposition. Therefore, before trial, Ringham moved to preclude that testimony. This was part of an extensive motion in limine argued and heard by the trial court, but denied prior to trial.

We recognize that "[t]he discovery of the substance of an expert witness's expected testimony is essential to trial preparation." *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 394 (Ky. App. 2004). However, the complained of testimony is not at all like the expert opinions that were precluded in *Clephas*. In *Clephas*, the expert witness was not made available for deposition prior to trial,

was not given any materials to review until very close to the commencement of trial, and "acknowledged that he did not formulate a medical opinion relating to [the plaintiff's] physical condition and/or its causation until a few hours before his trial testimony." *Id.* at 393. He then expressed causation and medical opinions, not previously disclosed, based upon his review of those materials. *Id.* The trial court permitted the testimony, and this Court reversed, finding that the undisclosed medical and causation opinions at trial violated the civil rules of discovery and constituted an abuse of discretion. *Id.*

Here, as the above testimony reflects, Dr. Potts did not express an expert opinion not previously revealed, *i.e.*, that Ringham was motivated by secondary gain. Rather, the expert simply agreed with a question asking whether secondary gain can be a relevant factor. Further, we have reviewed the testimony of Dr. Beck, Ringham's expert. He also agreed that secondary gain can be a relevant factor to consider, although he did not find it to be present in his evaluation. The trial court heard all the evidence and did not find this testimony should be precluded. We find no abuse of discretion in the trial court's ruling on this issue.

Similarly, Ringham argues that the trial court erred in permitting Dr. Potts to refer to Ringham's anxiety and depression before the jury. In his discovery deposition, Dr. Potts admitted that beyond the medical history of these

conditions appearing in her records, Ringham's anxiety and depression did *not* factor into his expert opinion. In response to questions by Ringham's counsel, the following discussion occurred:

> Q.      And same with her history of anxiety and depression, that's not mentioned anywhere else in either her physical exam – and please take your time.
>
> A.      It is not mentioned in my history. It's only mentioned in her records.
>
> Q.      Right, the one sentence in the very first paragraph. It's mentioned nowhere else in her ear records or anything like that?
>
> A.      You're speaking specifically of anxiety and depression?
>
> Q.      Correct.
>
> A.      She has a history of anxiety/depression with multiple doctors' visits for maintenance of these psychiatric diagnoses. That's what it says.
>
> Q.      Yeah. And I'm asking, that's the only place that it's referenced in your report, correct?
>
> A.      Uh-huh. Correct.
>
> Q.      So you're not planning on saying that that anxiety and depression affects any of your opinions?
>
> Mr. Breit: Objection to form.
>
> The witness: No, but I am a physician, so it is part of her medical history.
>
> Later, in his trial deposition, Dr. Potts was asked:

Q.      Same question about her anxiety.  Is her anxiety more likely than not to contribute to her eardrum perforation?

A.      Not directly, only perception of response to reaction to things like that.

Ringham now argues that the response for trial was different from the response in the discovery deposition.  She further argues that reference to anxiety and depression of a party was prejudicial and should have been entirely excluded.

First, we do not agree that the testimony or the two responses of Dr. Potts were vastly different.  Moreover, Ringham's counsel was able to cross-examine Dr. Potts regarding his prior testimony and any perceived inconsistency.  Second, we do not find that this limited reference to her prior medical history caused prejudice to Ringham.  Comment upon medical history or the medical record by an expert is generally permitted, unless clearly prejudicial.  Kentucky Rule of Evidence ("KRE") 803(4).

Pursuant to KRE 403, relevant evidence may be excluded if its probative value is outweighed by undue prejudice.  However, our case law emphasizes that the task of weighing probative value and undue prejudice of proffered evidence is "inherently factual, and therefore, within the discretion of the trial court." *Ross v Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015).  Even if evidence is improperly admitted, it is considered harmless error if the "reviewing

-9-

court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009).

The trial court clearly considered any claimed prejudicial effect of all of the testimony of Dr. Potts pursuant to KRE 403. For instance, the trial court sustained a separate motion precluding any reference to Ringham's prior use of illegal drugs, as the trial court found it to be too prejudicial. Ringham has not demonstrated prejudice in this regard sufficient to overcome the substantial discretion of the trial court under our rules of evidence.

Next, Ringham asserts that the trial court improperly allowed the admission of hearsay in the trial testimony of Dr. Potts. Apparently, counsel for Ringham had a conversation with a treating physician for his client that the treating physician then summarized in a note within the medical records. The medical records were provided to the defense and then the defense asked its expert about the note during his trial testimony. Counsel for Ringham objected to this in his pretrial motions and asserts the same objections here. Ringham argued that the note was hearsay; that it was not a statement by a party for purposes of medical treatment; and that the hearsay exception only allowed for admissibility of statements by a person seeking medical treatment. KRE 803(4). This is an interesting trial practice issue and raises questions that we would be inclined to address if properly before us.

-10-

However, at the pretrial conference, Ringham's counsel voluntarily and specifically advised the trial court that he agreed to allow the questioning of Dr. Potts regarding this note, so long as the note itself was not introduced before the jury. This was actually Ringham's proposal, and the trial court agreed to that solution on the record and in writing. Thus any argument on appeal was waived and is not properly before us.

Ringham's final argument regarding Dr. Potts is that the trial court erred by not admitting an exhibit referenced in his testimony. The testimony of Dr. Potts was played to the jury by video, with the exception of the portions excluded by the trial court. Near the end of the testimony, Dr. Potts referenced a document he had obtained from the internet. When the defense moved to admit exhibits for the jury, the defense did not include that document. Ringham sought to introduce it, and the trial court declined to do so.

The only authority asserted for this argument is Kentucky Rule of Civil Procedure ("CR") 32.01, which governs the admission of depositions, not the admission of documents into evidence. Ringham argues that any party may introduce any part of a deposition if the opposing party offers only part of the deposition. While that is true, here, the issue is not that the defense played only a portion of the video testimony. Instead, Ringham requested admission of a document. As such, CR 32.01 is simply not applicable.

The jury heard all of the expert's testimony, other than that excluded by the trial court as inadmissible. However, exhibits utilized during the deposition can still be excluded if they contain inadmissible hearsay. For example, the parties agreed that the expert's report would not be admitted before the jury, although it was also an exhibit to the deposition. Again, the decision whether to admit evidence is vested in the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *See Young v. J.B. Hunt Transp., Inc.*, 781 S.W.2d 503, 509 (Ky. 1989). It appears that counsel was able to cross-examine the expert regarding the document, but that the trial court did not find the document itself to be admissible. We have been provided with no basis to find that constitutes an abuse of discretion.

### C. Character Evidence of Prior Speeding

Ringham's complaint in this regard is rather vague. There was a pretrial motion to preclude all references to Ringham's speeding tickets. The trial court sustained that motion prior to trial. However, during trial, defense counsel did question Ringham about a comment she had made in her prior sworn testimony regarding her heavy foot.

First, this does not appear to be a violation of the trial court's prior ruling. Second, this alleged error does not rise to the level of an abuse of discretion because the jury did not even address fault for the accident, determining

instead that the injuries claimed were not related to the accident and/or did not exceed the threshold.

### D. Financial information of Dr. Beck

Ringham's next claim of error concerns her expert witness, Dr. Beck. Ringham asserts that Dr. Beck was "badgered" regarding his supposed refusal to provide expert-related income. Ringham retained Dr. Beck, a Florida physician, to conduct a records review and provide an opinion as to causation. The defense requested him to provide financial information consistent with *Metropolitan Property and Casualty Insurance Company v. Overstreet*, 103 S.W.3d 31 (Ky. 2003). In *Metropolitan*, the Supreme Court upheld

> admission into evidence of: (1) the number of examinations and evaluations performed by the expert doctor on behalf of employers, insurance companies, and other defendants in the previous twelve months as compared to the number of patients seen for treatment purposes during the same period; (2) the expert's charge for each examination; and (3) the expert's charge for each deposition given as a result of an examination.

*Primm v. Isaac*, 127 S.W.3d 630, 632 (Ky. 2004).

Here, Ringham asserts that the defense did not use proper means to obtain the information from Dr. Beck and argues that the defense implied Dr. Beck had been uncooperative or had ignored court orders. The defense filed a motion to compel that information, which the trial court granted prior to trial. However, it was only <u>after</u> the trial testimony was preserved that the defense moved the trial

court to issue such an order. Thus, in response to questions regarding Dr. Beck's income from examination and charges, he testified that he did not have the exact financial information requested, but that if he were so ordered, he would produce it. From our review of the record, there was no subpoena issued nor any written discovery addressed to the expert prior to his testimony.

At the pretrial conference, Ringham objected to the procedure and essentially argued that it was too late to request such information from Dr. Beck, and it had not been properly sought by subpoena. However, the trial court advised that, in keeping with the aforementioned authorities, it had signed an order requiring the production of the financial information by the expert.

In response to that ruling, counsel for Ringham stated that he would advise the doctor and have the information by the first day of trial. What became of that dispute is not clear from the record. From our review, there was no ruling during the trial, nor any further discussion of deleting the financial questions from the testimonial deposition. The trial court did not err in following the well-established law of this Commonwealth that permits such questioning and production of financial information. However, the ruling was not made until after the testimony was preserved for trial, due to the apparent failure of the defense to move for that relief prior to the trial deposition. Thus, the testimony that the jury

heard did suggest that there had been a denial of information by Dr. Beck, even though that had not yet been ordered or subpoenaed.

The trial court's order to produce financial information, although entered after the trial testimony had been preserved, was not in error. The implication of the questioning might have been limited in light of the trial court's ruling, but that was not relief that was requested. Indeed, it is not clear what relief Ringham requested prior to trial, and there was no objection nor motion made throughout the course of the trial. Thus, we find no prejudicial error that requires reversal.

### E.     Testimony of Chiropractor

Next, Ringham complains of the trial court's ruling precluding certain expert testimony from the purview of the jury. The chiropractor's testimony consisted of statements pertaining to chiropractic treatment and use of x-rays. Again, this was addressed at the pretrial conference. After reviewing the deposition, the trial court elected to redact this rather lengthy discussion because it found the testimony was irrelevant to the issues before the jury. Counsel for Ringham wanted to play the chiropractor's cross-examination to show the jury that defense counsel was badgering the expert. The trial court exercised its function as gatekeeper to determine relevancy. The testimony was provided by avowal. The excluded evidence was confusing, does not appear relevant to this Court, and the

trial court did not abuse its discretion when it precluded the testimony. As noted, "the decision whether to admit evidence is vested in the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion." *Welsh v. Galen of Va., Inc.*, 128 S.W.3d 41, 51 (Ky. App. 2001).

### F. Cumulative Errors

Finally, Ringham asserts that all the aforementioned rulings, cumulatively, resulted in a denial of her right to a fair trial. In support of this argument, Ringham refers us to the Supreme Court case of *Roberts v. Commonwealth*, 599 S.W.3d 841 (Ky. 2020). In *Roberts*, the Court held that repeated references to inadmissible testimony during a criminal trial were so unduly prejudicial as to have required a mistrial. *Id.* at 853. There, the defendant moved to preclude admission of a prior assault that she had been charged with 14 years earlier. *Id.* at 846. The trial court ruled that it would allow the admission of that prior assault if the Commonwealth laid the proper foundation. *Id.* As the Court held in *Roberts*, generally, prior physical violence remote in time has "little relevance other than establishment of a general disposition to commit such acts; and the prejudice far outweighs any probative value in such evidence." *Id.* at 848 (citation omitted). However, the Court also noted in *Roberts* that the Commonwealth had, "*against the trial court's order*, improperly introduced the

-16-

evidence (which should have been ruled inadmissible from the start)[.]" *Id.*  This occurred repeatedly and despite repeated motions for a mistrial.

We do not find the concerns expressed in *Roberts* to be at all comparable to the alleged errors here.  We have found no indication of any motions for mistrial in this case, and in several relevant instances, Ringham did not object during trial.  As we have already outlined, the trial court conducted a lengthy pretrial conference and ruled on numerous *in limine* motions, clearly fulfilling the gatekeeping function required of all trial courts.  Having reviewed each of the assertions individually and cumulatively, we cannot conclude that the trial court abused its discretion.  The judgment of the Jefferson Circuit Court based upon the jury verdict is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rob Astorino, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE:

Marc L. Breit
Scott E. Miller
Louisville, Kentucky