Betty **CORNETTE,** Barbara Hoagland, Sandy Horn, Leeanne Blackburn, Vicki Eckerle, Theresa Schott, Norma Hillerich, Carrie Reynolds, Cathy Tinsley, Debbie Foster, Linda Elzy, Dee Beckman, and Shirley Hayes, Appellants,

v.

**COMMONWEALTH** of Kentucky, Kentucky Department of Education, State Board for Elementary and Secondary Education; Thomas C. Boysen, Commissioner; Board of Education of Jefferson County, Kentucky; Donald W. Ingwerson, and John Wilhoit, Appellees.

No. 94–CA–0479–MR.

Court of Appeals of Kentucky.

June 2, 1995.

James D. Howes, Louisville, for appellant.

Kevin M. Noland, Frankfort, for appellees, Board of Educ. & T. Boysen.

Mark S. Fenzel, Dana L. Lucas, Louisville, for appellees, Jefferson Co. Board of Educ., D. Ingwerson & J. Wilhoit.

Mark S. Fenzel, Louisville, for appellees, Jefferson Co. Board of Educ., D. Ingwerson & J. Wilhoit.

Before EMBERTON, HOWERTON, and MILLER, JJ.

*OPINION*

HOWERTON, Judge.

Betty Cornette and other school bus drivers (Cornette) under contract with the Board of Education of Jefferson County (Board) appeal from a summary judgment entered by the Jefferson Circuit Court upholding the constitutionality of statutes and regulations requiring drug testing of public school bus drivers by the Kentucky Department of Education (Department). Cornette raises several issues in her appeal, including: (1) whether and to what extent the General Assembly conferred authority upon the Department to test school bus drivers; (2) whether such enabling legislation violates her constitutional right to equal protection; (3) whether such legislation is special legislation and, therefore, unconstitutional; (4) whether the regulations in question were promulgated in a manner contrary to law; (5) whether certain "guidelines" were promulgated in a manner contrary to law; and (6) whether her constitutional right against unreasonable searches and seizures has been violated. We have carefully reviewed the briefs and the law, and for the reasons outlined below, we affirm.

This dispute arose as a result of an amendment to 702 KAR 5:080 adopted by the State Board of Elementary and Secondary Education effective December 9, 1992. As amended, the regulation required that all school bus drivers working for any county school district in Kentucky be drug-tested following an accident resulting in bodily injury or in $1000.00 property damage, except when the bus is struck while legally parked. 702 KAR 5:080 § 2(2)(b). Subsequently, the Board distributed a memorandum to all school bus drivers containing guidelines implementing the state regulations. These guidelines required every public school bus driver to report all accidents and submit to a drug test if ordered.

Cornette filed a declaratory judgment action questioning the constitutionality of the regulations and moved for temporary injunction on April 7, 1993, seeking to enjoin enforcement of the drug and alcohol testing during the pendency of the action. Injunctive relief was denied by the Jefferson Cir-

cuit Court, and Cornette applied to this Court for interlocutory relief. CR 65.07(1). We denied the motion, and a subsequent motion to vacate that ruling was denied by the Kentucky Supreme Court on April 21, 1994. In the meantime, on December 10, 1993, the appellees had moved for summary judgment in the declaratory action. That motion was granted, and the case was dismissed on January 31, 1994. This appeal followed.

Cornette's first argument is introduced with the premise that "(t)he trial court erred in granting [the Department] Summary Judgment." However, the text of that argument is instead a challenge to the accuracy of certain language used in the judgment of the trial court to the effect that "there is no likelihood of future harm nor violation of constitutional rights" embodied in the complaint. Her argument assumes that the drug testing envisioned by the regulations violates some constitutional right and that it accordingly will cause her future harm.

Since we cannot agree that the drug testing is an impermissible invasion of her constitutional rights, as reflected in answer to each of her specific constitutional challenges below, we can hardly conclude that she has experienced "harm" in a constitutional sense. In the present case, the dispositive issue is whether there exists a genuine issue of material fact as to a violation of constitutional rights. Here, noting that no factual issue existed, the trial court ordered summary judgment for the Department relying on *Skinner v. Ry. Labor Executives Ass'n*, 489 U.S. 602, 620, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). In *Skinner* the Court clearly held that drug testing, similar to the procedure in the present case, was reasonable because the invasion of privacy was minimal and the safety-sensitive nature of the employees' duties justified the testing without individualized suspicion.

█ Even in the complaint in the present action, there is no challenge to the government's right to drug-test in a safety-sensitive area. There was only a claim that the guidelines issued by the local Board and the regulations promulgated by the Department exceeded the authority granted to those bodies by statute (not truly a constitutional issue in the first place). Summary judgment is proper where the court is required to resolve only legal issues, including judicial precedent. *Holladay v. Peabody Coal Co.*, Ky., 560 S.W.2d 550 (1977). When the trial court found in favor of the Department as to the propriety of the regulations, summary judgment was then proper.

█ We turn now to the specific constitutional challenges brought by Cornette on appeal. First, she argues that the actions of the Department exceed any authority granted by statute. It is her contention that the Department is only delegated the power to regulate school buses and not school bus drivers. We disagree.

KRS 189.540(1), (2) provides that "[t]he State Board for Elementary and Secondary Education *shall* adopt administrative regulations to govern the design *and operation* of all Kentucky school buses[,]" and that "[a]ny person operating a school bus under contract with a school district who fails to comply with any of the administrative regulations shall be guilty of breach of contract...." (Emphasis ours.)

KRS 156.160(1) provides that "the State Board for Elementary and Secondary Education shall promulgate administrative regulations establishing standards which school districts shall meet in ... operational performance.... Administrative regulations shall be promulgated for ... (g) [t]he transportation of children to and from school...."

Cornette would have us ignore the clear meaning of the words used by the legislature and accept her theory that it meant to authorize the Department to regulate only buses, not bus operators. She bases her interpretation on the theory that KRS 281A, the Commercial Driver's License Act, preempts the area of qualifying school bus drivers.

We have found no support for Cornette's interpretation either in other statutes or in case law. Moreover, the legislature specifically exempted school buses from the provisions of KRS 281.605(1) (except as to safety regulations) "while engaged in the transportation of students, under the supervision and

control and at the direction of school authorities."

■ We read KRS 156.160 and KRS 189.540 as clearly authorizing the Department to regulate the *operation* of school buses, which necessarily includes those people *operating* the buses. The language of both statutes is clear and unambiguous. It is well settled that where the words in a statute plainly express the legislative intent, there is no room for construction and the statute must be accepted as it is written. *Fryman v. Elec. Steam Radiator Corp.*, Ky., 277 S.W.2d 25 (1955).

■ Cornette next argues that if KRS 156.160 and KRS 189.540 grant authority to the Department to qualify and drug-test school bus drivers, then such legislation is "special" and unconstitutional because it applies to only drivers of public school buses and not to drivers of private or parochial school buses.

Special legislation was explained in *Kling v. Geary*, Ky., 667 S.W.2d 379, 382 (1984), quoting *Kentucky Milk Mktg. and Anti–Monopoly Comm'n v. Borden Co.*, Ky., 456 S.W.2d 831, 835 (1969), when it states that " '[t]he fact that a legislative act deals with a special subject does not make it special legislation.' Where the legislation establishes a classification made upon a reasonable and natural distinction which relates logically to the purpose of the Act, there is no violation of Kentucky Constitution § 59." The *Borden* court then went on to write that "[a]ll acts must deal with a special subject. . . . We are not impressed with the argument that the legislature cannot deal with one particular item separately because of the fact that it has dealt with a general subject." *Borden*, 456 S.W.2d at 835.

KRS 189.540 and KRS 156.160 apply only to public school bus drivers because the Department is only authorized to regulate public school buses and drivers. The statutes apply equally to all members of the class of public school bus drivers, and they were enacted to further a legitimate state interest in the safe transportation of public school children.

■ If the legislature were prohibited from enacting separate legislation covering public schools (but not private schools), the teachers' pension laws, the affirmative action enactments, KERA, and even the creation of the state Department of Education would be called into question. Surely laws pertaining to public employees need not, under the Kentucky Constitution, also apply to private schools.

■ In her next allegation, Cornette claims that 702 KAR 5:080 denies her due process under the Fourteenth Amendment to the U.S. Constitution because it does not provide for a hearing. We disagree.

In *Skinner, supra*, 489 U.S. at 631, 109 S.Ct. at 1420–21, the United States Supreme Court held that particularized suspicion was not required prior to drug testing, because evidence could be lost in a delay. Certainly, if a drug test may be performed without particularized suspicion in exigent circumstances, then it follows that no hearing is required before the testing. We have no trouble holding that the public interest in determining a driver's ability to drive safely at the time of the accident is a compelling reason to dispense with a hearing prior to testing.

■ Cornette counters that she is at least entitled to a hearing before being discharged for refusal to submit to a drug test. Where the safety of the children of the Commonwealth is at risk, a hearing before termination is not necessary to due process. Cornette's right to a hearing after the fact is assured by the grievance procedure in her collective bargaining agreement.

■ Next, Cornette contends that 702 KAR 5:080 violates the letter and spirit of KRS 13A.120. The latter merely specifies under what circumstances an administrative agency may promulgate regulations to implement statutes. The regulations must not address matters properly within the purview of the statute and which the statute has already addressed. More specifically, KRS 13A.120(2) states that "[a]n administrative body shall not promulgate administrative regulations . . . (e) [w]hen a statute prescribes the same or similar procedure for the

matter regulated; [and] (f) [w]hen a statute sets forth a comprehensive scheme of regulation of the particular matter[.]"

Cornette contends that KRS Ch. 281A sets forth a comprehensive scheme of regulating the same matter sought to be regulated by 702 KAR 5:080. We disagree. As noted earlier, KRS Ch. 281A deals with commercial driver's licenses, which public school bus drivers are required to possess pursuant to KRS 189.540(3). 702 KAR 5:080 deals with bus drivers' qualifications and responsibilities. The regulation is much more detailed, comprehensive, and pertinent regarding school bus drivers than is the statute dealing with commercial driver's licenses, even though the statute does deal with alcohol and drug testing.

■ 601 KAR 1:005 § 3(2)(a) exempts vehicles owned by a board of education from compliance with certain governing federal regulations found in Title 49 of the Code of Federal Regulations (CFR). However, public school bus drivers are still required to provide proof of having passed the medical examination set forth in 49 CFR Part 391, Subpart E, or proof of a medical waiver pursuant to 601 KAR 11:040. Therefore, the regulations do not invade the province of the federal regulations, as Cornette would have us believe. Basically, public school bus drivers must comply with the medical aspect but not with all other aspects of the federal regulations governing commercial driver's licenses.

Cornette seems to argue that because the Transportation Cabinet regulates commercial driving requirements, including drug testing, then the area has been preempted and there is nothing for the Department of Education to regulate. We do not believe that the specific duties relative to drug and alcohol testing set forth in 702 KAR 5:080 § 2(2)(a) through (6) run afoul of other statutes and regulations in violation of KRS 13A.120. We agree with the Department and Board that the legislation challenged in this action does not govern the same or similar procedures, nor does 702 KAR 5:080 conflict with other more general statutes.

Next, Cornette complains that the guidelines contained in the memorandum to the Jefferson County public school bus drivers are null and void because they violate KRS 13A.100, .120(6), KRS 158.110(4), and KRS 160.370. Cornette contends that the state regulation and the county guidelines differ with respect to when a driver may be tested, and whether both a blood test and urinalysis are to be performed. We have compared both the state regulations and county guidelines and do not see a distinction being made.

■ Also, Cornette takes issue with the language of KRS 160.370 that the superintendent of schools "shall prepare, under the direction of the Board, all rules, regulations...." She complains because the memorandum was issued by the director for transportation services and not the superintendent. KRS 160.370 states that the superintendent shall "prepare," not necessarily write. Further, we do not believe these guidelines are tantamount to regulations. They merely further elucidate the new regulations embodied in 702 KAR 5:080 § 2(2)–(6). Although we follow the version of 702 KAR 5:030 in effect at the relevant times, we note that the word "standards" has now been substituted for the word "regulations" in the last sentence under the NECESSITY AND FUNCTION heading of 702 KAR 5:030 in the emergency amendment adopted January 18, 1995. The superintendent properly has an oversight role.

■ Cornette also complains that 702 KAR 5:080 and the Jefferson County guidelines are vague, overly broad, and arbitrary. 702 KAR 5:080 § 2(2)(b) requires that a drug-alcohol test be performed if the bus driver is involved in a "vehicle accident resulting in bodily injury or property damage over $1,000, except an accident in which the district's vehicle is struck while legally parked."

■ A statute is overly broad when, "in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible." *Commonwealth v. Ashcraft*, Ky.App., 691 S.W.2d 229, 232 (1985). Since there is no right to partake of alcohol or drugs while on duty or subject to call as a bus driver, we fail to see

how the statutes and regulations prohibit constitutionally permissible conduct. A statute is impermissibly vague when "a person disposed to obey the law could [not] determine with reasonable certainty from the language used whether contemplated conduct would amount to a violation." *Commonwealth v. Foley*, Ky., 798 S.W.2d 947, 951 (1990). Again, we fail to see how the regulations are so vague that Cornette could not know what behavior is prohibited.

However, "a statute may be perfectly clear and unambiguous but nevertheless unconstitutional if it prohibits constitutionally protected activities or may be *enforced in an arbitrary manner.*" *Foley*, 798 S.W.2d at 952. (Emphasis added.) A [penal] statute must be drafted with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (*quoted in Musselman v. Commonwealth*, Ky., 705 S.W.2d 476, 478 (1986)). Cornette contends no guidelines are provided to determine, in a timely manner, whether the $1,000 threshold has been met, and there is unfettered discretion placed in school employees to make this determination. As in *Skinner, supra*, 489 U.S. at 620, 109 S.Ct. at 1414–15, the job of school bus driver involves safety-sensitive tasks, and the law will allow more discretion in attempting to prevent harm to the public. This is a proper balancing of the competing interests of the state in "ensuring the safety of the traveling public" and the interests of the individual in privacy. *Griffin v. Wisconsin*, 483 U.S. 868, 885, 107 S.Ct. 3164, 3174–75, 97 L.Ed.2d 709 (1987). The regulations provide that the urine testing is to be monitored but not observed. It is to be done in a professional manner, with no implication of fault on the part of the drivers. The mere act of testing cannot be said to be an inference of fault; otherwise we could never test for drugs or alcohol. There is no merit to this argument.

Finally, Cornette contends that the drug testing procedure violates the unreasonable search and seizure constraints of the Fourth and Fourteenth Amendments to the United States Constitution. It appears that Cornette recognizes the right of the government to test for drugs, especially in safety-sensitive areas such as regulating the conduct of railroad employees, supervision of probationers, and the operation of prisons. *Skinner, supra*, 489 U.S. at 620, 109 S.Ct. at 1414–15. However, she objects to the manner in which the statute and regulations are being carried out and applied to her. As noted directly above, the state's interest in insuring the safety of school children must be balanced against the privacy interests of the bus drivers. The trial court wrote in its opinion and order of August 6, 1993, denying the temporary injunction:

> The government has an overriding interest in regulating the conduct of those people whom they employ, and in insuring the safety of the public. *Skinner v. Railway Executives Assn.*, [489 U.S. 602] 109 S.Ct. 1402 [103 L.Ed.2d 639] (1982 [sic]). Although the collection and analysis of biological samples are considered searches under the Fourth Amendment, only those searches that are unreasonable are proscribed. *United States v. Sharpe*, 470 U.S. 675, 682 [105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985)]. However, "in certain limited circumstances, the Government's need to discover such latent or hidden conditions [drug or alcohol use], or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion." *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 668, [109 S.Ct. 1384, 1392, 103 L.Ed.2d 685] (1989).

The judgment of the Jefferson Circuit Court is affirmed.

All concur.