RENDERED: MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0034-MR

DENISE BRADSHAW, AS
ADMINISTRATRIX OF THE ESTATE
OF DAVID BRADSHAW, III, AND
AMANDA GORDON, AS GUARDIAN
FOR DAVID BRADSHAW, IV, AND
DARRIAN BRADSHAW                                   APPELLANTS


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE LUCY ANNE VANMETER, JUDGE
                    ACTION NO. 19-CI-03277


INDIA THOMASON                                        APPELLEE


AND


NO. 2025-CA-0074-MR


INDIA THOMASON                                  CROSS-APPELLANT


            CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE LUCY ANNE VANMETER, JUDGE
                    ACTION NO. 19-CI-03277

DENISE BRADSHAW, AS
ADMINISTRATRIX OF THE ESTATE
OF DAVID BRADSHAW, III, AND
AMANDA GORDON, AS GUARDIAN
FOR DAVID BRADSHAW, IV, AND
DARRIAN BRADSHAW                                    CROSS-APPELLEES


OPINION AFFIRMING IN PART AND
REVERSING AND REMANDING IN PART
ON APPEAL 2025-CA-0034-MR AND
AFFIRMING ON CROSS-APPEAL 2025-CA-0074-MR

** ** ** ** **

BEFORE:  ACREE, EASTON, AND TAYLOR, JUDGES.

EASTON, JUDGE:  This is an appeal and cross-appeal in a wrongful death case resulting from a collision between a motorcycle and a school bus after the school bus driver made a right turn on a red light.  After a jury trial, both vehicle operators were found to be negligent with an apportionment of fault of 67% for the motorcycle operator and 33% for the bus driver.

The trial court concluded that Kentucky school bus safety standards prohibiting a right turn on a red light did not apply to the bus driver in this case, because the Kentucky Board of Education was not authorized to regulate that bus owner's operation of a school bus.  As a result, the circuit court did not instruct the

jury about this specific duty as negligence per se.[1]  We conclude that the school bus driver *was* subject to Kentucky school bus safety standards and had a specific duty not to turn right on a red light.  Because the circuit court imposed only the incomplete duty of "ordinary care" generally to the school bus driver, we reverse the judgment and remand for a new trial to determine only apportionment of fault.  We find no abuse of discretion in the various evidentiary issues raised by both sides, and so we otherwise affirm the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

David Bradshaw (Bradshaw) was operating a motorcycle on North Broadway in Lexington.  He was headed toward town and was in the left lane.  Appellee India Thomason (Thomason) was driving a school bus.  Thomason was turning onto North Broadway from New Circle Road.  She had a red light.  She decided to turn right onto North Broadway going in the same direction as Bradshaw.  The bus was going into the left lane too.  Bradshaw struck the back of the school bus.  He then hit a wall.  He died from his injuries.

---

[1] Kentucky Revised Statutes (KRS) 446.070 codifies the common law doctrine of negligence per se.  Specifically, it authorizes a civil action when a statutory violation causes harm.  In this case, the question is whether a violation of a regulation issued pursuant to statutory authority caused harm.  Negligence per se extends to regulation violations when the regulation is consistent with its enabling statute and applies to the safety of the citizenry.  *See St Luke Hosp. Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011).  The Appellants do not argue that the regulation at issue cannot support negligence per se.  Rather, they argue the regulation does not apply.

The school bus was owned by Lexington-Fayette Urban County Government (LFUCG). Thomason was employed by LFUCG as the Transportation Coordinator with the Division of Youth Services. Part of Thomason's job duties included providing transportation for Fayette County Public Schools (FCPS) students attending the Audrey Grievous Center (AGC), formerly known as the Lexington Day Treatment Center. AGC provides certified school instruction in accordance with a Memorandum of Agreement (MOA) between LFUCG and FCPS.

Section 1 of the MOA describes AGC as:

> a treatment program with an educational component operated by the LFUCG in conjunction with the Kentucky Department of Juvenile Justice (DJJ) and the Fayette County Public Schools (FCPS) for Lexington Fayette County middle and high school youth.
> The mission of the Center is to provide youth with the academic, behavior, and social skills needed to successfully transition back to their home schools and graduate.

In addition to therapeutic services, students receive state-mandated educational instruction provided by certified public school teachers employed by FCPS on the AGC premises. Although the MOA is silent on the issue of transportation on regular school days, FCPS students are required to either ride the school bus owned by LFUCG or have a parent transport them to and from AGC.

At the time of the collision, Thomason was dropping off her last FCPS student for that school day. Thomason was driving a traditional yellow school bus affixed with signs and markings required by regulation, including the "Right Turn on Red Prohibited" sign on the right rear bumper.

Appellants brought this wrongful death lawsuit against LFUCG as the owner of the bus and against Thomason as the driver in both her individual and official capacities. LFUCG and Thomason, in her official capacity, filed a Motion for Summary Judgment based on sovereign immunity. In May 2023, the trial court granted the motion and dismissed all claims against LFUCG and Thomason in her official capacity, leaving only her individual liability to be determined.

In November 2023, the trial court entered an order related to several motions to exclude expert testimony and decided to reserve the issue of the school bus driver's duties for a later date. The contested issue was specifically about whether Thomason could turn right on a red light while driving this school bus. After the filing of briefs related to the issue, the trial court conducted a hearing. In April 2024, the circuit court ruled that Thomason's duty was not that of a school bus driver, so she had no specific duty of care not to make a right turn on a red light while operating a school bus owned by LFUCG.

The case proceeded to trial in November 2024. Photographs of the bus showing a "Right Turn on Red Prohibited" sign were admitted into evidence

without any explanation about how the trial court had ruled on the issue of whether that prohibition applied to Thomason. As the jury began deliberations, the first question they asked was whether this sign on the back of the bus reflected Kentucky law, and whether the sign in the picture was evidence the jury could use. Counsel specifically requested the circuit court to advise the jury about its ruling that this regulation did not apply to Thomason, but the trial court refused. Instead, the trial court advised the jury that "the legal duties of Ms. Thomas and Mr. Bradshaw are set forth in the instructions. The photo is in evidence." We will not speculate on whether that particular response cleared up any jury confusion.

Ultimately, the jury returned a verdict in favor of Appellants, finding both parties at fault and apportioning that fault two-to-one to Bradshaw as compared to Thomason. The jury awarded compensatory damages but rejected Appellants' claim for punitive damages, finding no evidence of gross negligence or wanton conduct by Thomason. Appellants filed this timely appeal, and Thomason filed a cross-appeal. All issues have been properly preserved, and all briefs are compliant with the Kentucky Rules of Appellate Procedure (RAP).

## STANDARD OF REVIEW

Whether a legal duty exists is purely a question of law, and questions of law are generally resolved by the court, not the jury. *Bartley v Commonwealth*, 400 S.W.3d 714, 726 (Ky. 2013) (citations omitted). Issues of law are reviewed *de*

*novo* by the appellate courts. *Monumental Life Ins. Co. v. Department of Revenue*, 294 S.W.3d 10, 16 (Ky. App. 2008) (citations omitted). Issues concerning the trial court's evidentiary rulings, including the admission of expert testimony, are reviewed for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577–78 (Ky. 2000). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

### APPEAL 2025-CA-0034

Appellants claim the following errors on appeal: (1) the circuit court erroneously concluded that KRS 156.160, KRS 189.540, and 2018 702 KAR[2] 5:080 did not apply to Thomason based on the argument that the Kentucky Board of Education did not have authority to regulate LFUCG's school bus operations, and, as a result, the circuit court applied the wrong legal duty; (2) related to their first argument, they insist that the circuit court misinterpreted *Cornette v. Commonwealth*, 899 S.W.2d 502 (Ky. App. 1995), which resulted in the application of an incomplete legal duty of care; (3) next the circuit court erred when it decided a genuine issue of fact that Thomason was permitted to turn right

---

[2] Kentucky Administrative Regulations.

on a red light instead of allowing the jury to decide that as a fact; (4) then the circuit court erred when it denied Appellants' request to introduce evidence about Thomason's operator's license; and (5) finally, the trial court erred in allowing the testimony of Appellee's expert that Bradshaw was operating his motorcycle at a high rate of speed or in excess of the speed limit, and in refusing to admonish the jury to disregard this testimony.

## AGC IS PART OF A PUBLIC SCHOOL

Appellants' first three challenges concern a central issue: whether the bus Thomason was driving on the day of the collision was a "school bus" subject to the prohibition against making a right turn on a red light. The answer to this question is resolved by first determining whether AGC is a public school and then determining whether the bus owned by LFUCG but transporting FCPS students, who also attend AGC, is a "school bus" subject to Kentucky school bus safety standards. We answer both questions in the affirmative.

Kentucky Constitution § 183 provides that "[t]he General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the State." KRS 158.030(1) defines "Common school" as a secondary school of the state, supported in whole or in part by public taxation, taught by a certified teacher for a minimum school term as defined by KRS 158.070. "Common school" is a term synonymous with "public" school. It is a

term treated as mutually exclusive with nonpublic school by the provisions of KRS 159.030. *Fannin v. Williams*, 655 S.W.2d 480, 481 (Ky. 1983) (citations omitted).

KRS Chapter 159 governs "Compulsory Attendance" and spans KRS 159.010 through KRS 159.990. These provisions require Kentucky parents to "send" their children who are between the ages of six and sixteen to school. KRS 159.010. The exemptions from compulsory attendance at public schools recognized in KRS 159.030(1) include a child "(b) [who] is enrolled and in regular attendance in a private, parochial, or church regular day school."

While Thomason argued, and the trial court agreed, that AGC was not a school but rather a "treatment program" with an educational component, Kentucky law requires children to attend "school." And Ch. 159 classifies schools as either (1) public, (2) private, (3) parochial, or (4) church. There is no option for attendance of a "program." Since AGC students are required to attend school, and there is no evidence that AGC students receive state-mandated educational instruction anywhere else, we must determine that AGC is part of a public school.

The operational framework between AGC, LFUCG, and FCPS is articulated in the MOA. Pursuant to this agreement, LFUCG provides therapeutic services to AGC middle and high school students, including group and individual counseling sessions. FCPS is responsible for public school instruction at 6 hours per day for 177 days annually, with instruction for extended days, as required by

Kentucky law and the Kentucky Educational Collaborative for State Agency Children (KECSAC).[3]

FCPS is responsible for employing and supervising teachers and support staff in following KECSAC guidelines and must inform LFUCG of the number of students that will be in the AGC program for the regular school year after KECSAC funding has been confirmed.[4] The purchase and provision of all instructions, supplies, books, and reference materials are provided by FCPS. All grades, attendance, and other information regarding students' progress at AGC is transferred to the student's assigned or "home" school within timeframes established by FCPS.

AGC provides education to students in the custody of the Commonwealth referred to them by JCC, the Department for Community Based Services, Truancy Court, and the Family Accountability, Intervention and Response Team. Section 2 of the AGC Student Handbook provides that teaching staff are employed by Fayette County Board of Education and all grades are transferable to and from FCPS. AGC students graduate from high school in the

---

[3] KECSAC is a statewide collaborative that works with state agencies, school districts, and local programs to ensure that state agency children receive a quality education comparable to all Kentucky students. "State Agency Children" are those children in the custody or supervision of the Commonwealth and served in programs funded and/or operated by DJJ.

[4] MOA Section IV, TR: Vol. III, p. 465.

Fayette County School District upon completion of a minimum of twenty-two (22) credits in compliance with state and local requirements. AGC students can also earn advanced college placement credits through the Fayette County School District. And both AGC and FCPS hold AGC out as a non-traditional "school" on their respective websites.

There is no evidence, or even argument, that AGC is a parochial or church school. AGC has no religious affiliations. AGC is also not a private school. AGC students do not elect to attend AGC and do not pay private tuition for their instruction at AGC. Stephanie Hong, Directory of Youth Services at LFUCG, testified that students attending AGC are required, or court-ordered, to attend AGC's program. These students are removed from their public assigned or "home" school and involuntarily placed in the AGC program where they receive necessary therapeutic interventions *and* state-mandated educational instruction that the school district, FCPS, is required to provide.

The evidence clearly establishes that AGC is a public school, often referred to as an alternative school. FCPS meets its state-mandated educational obligation by outsourcing it to LFUCG by contract. This school facility may be owned by LFUCG, but it is operated in part by the county school district, FCPS. This school is supported by public taxation, and students there receive state-mandated educational instruction from certified teachers in timeframes required by

-11-

Kentucky law. AGC meets the definition of "common" or public school, and a public school is included in the acceptable classifications of schools for state-mandated education.

### THOMASON WAS PROHIBITED FROM TURNING RIGHT ON A RED LIGHT

Having determined that AGC students are public school students, we next determine whether the bus transporting these students is a school bus subject to safety standards promulgated by the Kentucky Board of Education. As we will discuss below, Kentucky statutes authorize the Board of Education to promulgate administrative regulations establishing standards school districts shall meet in the transportation of children to and from school. The trial court determined that these authorizing statutes and resulting bus safety regulations were not binding on LFUCG or Thomason because the Kentucky Board of Education is not authorized to regulate LFUCG's operation of buses. Specifically, the trial court determined that LFUCG was neither a school district nor a "private" contractor and so its buses and bus drivers were not subject to school bus safety regulations.

Two statutes authorize the Kentucky Board of Education to promulgate regulations concerning transportation of public school students on school buses: KRS 156.160 and KRS 189.540. As a result of these authorizing statutes, the Kentucky Board of Education promulgated 2018 702 KAR 5:080, which prohibits a right turn on a red light by a school bus. The trial court ruled

that the authorizing statutes were inapplicable to this case, and, as a result, 2018

702 KAR 5:080 did not apply.  The effect of this ruling was to impose on

Thomason a duty of only ordinary care, which permitted her to make a right turn

on a red light to the extent other drivers were permitted to do so.

## AGC STUDENTS ARE TRANSPORTED BY THE AUTHORITY OF THE FAYETTE COUNTY SCHOOL DISTRICT

KRS 156.160(1), provides as follows:

With the advice of the Local Superintendents Advisory Council, the Kentucky Board of Education shall promulgate administrative regulations establishing standards which school districts shall meet in student, program, service, and operational performance.  These regulations shall comply with the expected outcomes for students and schools set forth in KRS 158.6451. Administrative regulations shall be promulgated for the following:

. . .

(k)  The transportation of children to and from school.

KRS 156.153(3) defines the term "school bus" as:

any motor vehicle which meets the standards and specifications for school buses as provided by law or by the standards or specifications of the Kentucky Department of Education authorized by law and used solely in transporting school children and school employees to and from school under the supervision and control and at the direction of school authorities . . . .

The circuit court determined that KRS 156.160 did not apply to the

bus at issue in this case because this statute regulates school districts, and LFUCG

is not a school district. The circuit court's focus was narrowly on the status of the bus owner rather than on the use of the bus.

As we have said, AGC meets the definition of a public school, and buses going to and from that location are used for public school student transportation. While LFUCG has contractually agreed with FCPS to assume transportation duties during the regular school day, they do so on behalf of FCPS. The Fayette County School District is responsible for transportation of its students, but there is no requirement that the school district own the bus. It is enough that school transportation happens "at the direction of" school authorities. KRS 156.153(3).

To rule otherwise would create an unintended loophole, based on ownership of the bus, which allows a different, reduced, standard of school bus safety for students attending court-ordered public alternative schools as compared to those students attending their public "home" school. Such a loophole would be contrary to the spirit of the law in ensuring the safe transportation of public school children. But the parties have also argued about another authorizing statute, and we should address this argument as well.

## LFUCG IS A CONTRACTOR FOR FAYETTE COUNTY PUBLIC SCHOOLS

The second authorizing statute is KRS 189.540(1), which provides:

(1)(a)  The Kentucky Board of Education shall promulgate administrative regulations to govern the design and operation of all Kentucky school buses and to govern the operation of passenger vehicles owned, leased, or privately contracted by the district that transport students under KRS 156.153(3).

(b)  The board shall, with the advice and aid of the Department of Kentucky State Police and the Transportation Cabinet, enforce the administrative regulations governing the operation of all school buses, whether owned by a school district or privately contracted, and all passenger vehicles owned, leased, or privately contracted by the district that transport students under KRS 156.153(3).

(c)  The administrative regulations covering the operation shall by reference be made a part of any contract with a school district.  Every school district and private contractor referred to under this subsection shall be subject to those regulations.

. . .

(3)  Any employee of any school district who violates any of the administrative regulations in any contract executed on behalf of a school district shall be subject to removal from office.  Any person operating a school bus or passenger vehicle to transport students under contract with a school district who fails to comply with any of the administrative regulations shall be guilty of breach of contract and the contract shall be canceled after proper notice and a hearing by the responsible officers of such school district.

(4)(a) Any person who operates a school bus shall be required to possess a commercial driver's license issued pursuant to KRS 281A.170 with a school bus endorsement as described in KRS 281A.175.

This statute presents problems with how language is used within the various sections. Subsections (1)(a) and (3) separate school buses from passenger vehicles "privately contracted." Subsection (1)(b) then makes a reference to "all school buses, whether owned by a school district or privately contracted." But Subsections (1)(c) and (3) also have provisions referring to "any contract." The circuit court relied on the "privately contracted" language and then relied heavily on this Court's decision in *Cornette v. Commonwealth*, *supra.* Ultimately, the circuit court determined that KRS 189.540 did not apply because this statute only applies to school districts and their *private contractors*, and LFUCG is not a *private* contractor but rather a public entity.

The trial court based its determination on several factors. First, the MOA between the LFUCG and the FCPS describes AGC as a treatment program with an educational component operated by LFUCG in conjunction with other agencies. Next, the trial court relied on Appellants' own description of AGC as a collaborative program and contractor. The trial court construed AGC to be "an LFUCG program/school for which the LFUCG contracts with FCPS for certain educational components." So, according to the circuit court, LFUCG was not the "private contractor" for FCPS, but rather, FCPS was a contractor for LFUCG. Based on this conclusion, the circuit court reasoned that KRS 189.540 and the regulations it authorizes are not binding upon an employee of LFUCG.

Again, AGC is a public-school facility, owned and operated, in part, by LFUCG. FCPS outsourced its student transportation obligation for AGC students in the Fayette County School District to LFUCG by contractual agreement. If, conversely, FCPS was the private contractor for LFUCG, FCPS would have used its own school buses. Instead, FCPS outsourced its transportation responsibility to LFUCG, a contractor, who purchased the school bus at issue for the purpose of transporting students to their court-ordered public alternative school in the Fayette County School District.

We recognize the confusion created by reference in the statute to a "private contractor" when the contract is with a public entity. The point is that FCPS entered into a contract for transportation. To say that the statute does not apply to this contractor status defeats the very purpose of the statute, and we believe would lead to an absurd and unintended result. As we have already said, apart from the somewhat inconsistent "private" contractor language in KRS 189.540, the transportation duty for school buses imposed by KRS 156.153 and KRS 156.160 applies, regardless of any "private" contractor status under KRS 189.540.

KRS 158.110(4) also provides that Boards of Education shall adopt policies to ensure the comfort, health, and safety of the pupils who are transported consistent with the regulations of the Kentucky Board of Education regarding the

-17-

transportation of pupils. There is no dispute that LFUCG purchased the bus for the purpose of providing transportation of pupils. And although Appellee argues that Kentucky school bus safety standards do not apply to LFUCG buses, LFUCG ensured its traditional yellow school bus *did* comply. The purchase order for the school bus at issue required compliance with the Kentucky Department of Education Master Agreement ensuring minimum specifications for school district equipment. Whether LFUCG believed such compliance was necessary, or this was simply a gratuitous acquiescence, we determine that Kentucky school bus safety standards did in fact apply to the bus operated by Thomason on the day of the collision.

Basically, Thomason asks us to believe that AGC is not a school and that the traditional yellow bus with flashing red lights transporting public school students is not a school bus. Thomason then also appears to ask us to believe that other drivers will appreciate the "Right Turn on Red Prohibited" sign on the rear bumper of this bus does not really apply to that *particular* bus. For the reasons we have stated, we decline to do so.

At this point we note the reliance on *Cornette* is misplaced. That case also involved a challenge to an administrative regulation, the promulgation of which was authorized by KRS 156.160 and KRS 189.540. The regulation applied in that case required post-accident drug testing of public-school bus drivers under

certain conditions,[5] and the constitutional challenge made concerned whether the Kentucky Department of Education had the authority to regulate only its buses or its drivers as well. This Court upheld the constitutionality of the regulation, finding "the state's interest in insuring the safety of school children must be balanced against the privacy interests of the bus drivers." *Cornette*, 899 S.W.2d at 508. While the Court in *Cornette* noted that the General Assembly may enact legislation that applies to public schools, but not necessarily private schools to the same extent, AGC again is not a private school.

Thomason owed a specific duty of care required of Kentucky public school bus drivers not to make a right turn on a red light. The circuit court imposed an incomplete legal standard of care. We must now address to what extent this error impacted the proceedings in the circuit court.

"When a statutory duty is supported by evidence, it must be incorporated into a jury instruction as a 'specific duty.'" *Henson v. Klein*, 319 S.W.3d 413, 421 (Ky. 2010). A failure to give a specific duty based on negligence per se is a harmless error only when no evidence at the trial shows that the injuries claimed resulted from that violation. *See Tucker v. Ragland-Potter Co.*, 148

---

[5] 702 KAR 5:080 requires drug testing of public-school bus drivers following an accident resulting in bodily injury or in $1000.00 property damage, except when the bus is struck while legally parked.

S.W.2d 691, 696 (Ky. 1952). That cannot be said in this case. So, we must decide what must be done on remand.

We do not believe that a retrial on the question of negligence generally is required. Without question, the evidence supports the findings by the jury that both vehicle operators at least violated their general duty of ordinary care. Damages are by design in jury instructions completely separate from apportionment of fault. As we will explain in our further analysis, we find no errors in the evidentiary rulings of the circuit court which could have impacted the determinations of negligence. Nothing impairs the previous assessment of damages.[6] We conclude then that the error affects only the apportionment of fault determinations. And thus, only that question must be addressed at a new trial.

## THOMASON'S TYPE OF LICENSE

Appellants' fourth contention is that the trial court erred when it denied their Motion for Reconsideration. This argument relates to the admissibility of evidence of what type of driver's license Thomason had. Appellants argue an "S" endorsement was required to comply with Kentucky school bus standards and so Thomason also should have held the "S" endorsement on her license, which she did not have.

---

[6] Thomason's negligence in the operation of the school bus was ordinary driver negligence and would not sustain an award of punitive damages. *See M.T. v. Saum*, 3 F. Supp. 3d 617, 624-25 (W.D. Ky. 2014).

-20-

The circuit court did not err in excluding this evidence. As the Kentucky Supreme Court explained over 25 years ago, the absence of a proper license is not evidence that a driver did not exercise ordinary care or otherwise properly operate her vehicle. *Rentschler v. Lewis*, 33 S.W.3d 518, 519-21 (Ky. 2000). This argument confuses the issues; it is a waste of time, and any probative value of evidence of what kind of license Thomason had is outweighed by the danger of undue prejudice. KRE[7] 403.

## TESTIMONY OF PETER CURLESS

Appellants' final contention is that the trial court erred in allowing the testimony of Appellee's expert, Peter Curless, that Bradshaw was operating his motorcycle at a high rate of speed or in excess of the speed limit and by not admonishing the jury to disregard this testimony.

Prior to trial, Appellants attempted to prevent Curless from speculating as to speed and to limit his testimony. In its November 2024 Order, the trial court ruled that Curless was "permitted to testify that the decedent was traveling in the low 40's at the time of the collision but he cannot testify that the decedent was driving at a 'high rate' or 'excessive speed.'"[8] At trial, Curless estimated that the bus was possibly going 26 mph at the point of impact and that

---

[7] Kentucky Rules of Evidence.

[8] TR: Vol. XII, pg. 2909.

the motorcycle was going faster than the bus. Appellants moved to have the trial court admonish the jury regarding the Curless's testimony that the motorcycle was "going at a high rate of speed." The trial court refused. We cannot say this was an abuse of discretion as the testimony did not include a speed more than the low 40's. Curless complied with the permissible limitations imposed by the trial court's November 2024 Order.

## CROSS-APPEAL 2025-CA-0074

## MARIJUANA EVIDENCE

Thomason raises four issues in her cross-appeal. The first error concerns the trial court's exclusion of marijuana evidence, including testimony offered by defense toxicologist Mike Ward (Ward). The trial court granted Appellants' motion to exclude this evidence, upon finding no expert would opine that Bradshaw was operating under the affects of THC at the time of the collision. The trial court reasoned that "without such expert testimony, the presence of THC in the decedent's blood or on his person is not relevant and must be excluded."[9]

Thomason argues this evidence should have been admitted as relevant under KRE 401/402 and KRE 702. She insists that comparative fault and causation turned on why Bradshaw was weaving through traffic and attempting a pass using a road shoulder. Thomason proffered blood toxicology, recovery of a

---

[9] TR: Vol. VIII, p. 1730.

bagged leafy substance, and Ward's testimony explaining delta-9-THC's established effects on perception, attention, reaction time, and psychomotor control. Thomason insists this information would have given jurors specialized context to evaluate the observed driving.

But Ward admittedly could not opine that Bradshaw was impaired at the time of the crash. Ward was not certain of the last time Bradshaw may have used marijuana prior to the crash, and there was no evidence Bradshaw consumed marijuana near the time of the crash.[10]

The trial court did not abuse its discretion in excluding this evidence. The trial court is tasked with balancing the probative value of evidence against danger of undue prejudice as required by KRE 403. The language of KRE 403 is carefully calculated to leave trial judges with extraordinary discretion in the application and use of KRE 403. *Probus v. Commonwealth*, 578 S.W.3d 339, 347 (Ky. 2019) (citations omitted).

The trial court's ruling excluding the marijuana evidence and Ward's testimony is supported by sound legal principles and consistent with the holding of the Kentucky Supreme Court in *Burton v. Commonwealth*, 300 S.W.3d 126, 137-38 (Ky. 2009), wherein our highest court found that a trial court correctly excludes

---

[10] Deposition testimony of Mike Ward, August 28, 2023, at 33:10-36:1, 35:16-36:1, 39: 25-40:3, 41:1-10, 45:21-46:5, 48: 20-24;  TR:  Vol. V, p. 1056-71.

testimony of a toxicologist where he cannot establish when a defendant ingests illegal substances or whether he was impaired at the time of the accident.

## OTHER TESTIMONY OF PETER CURLESS

The second issue raised in the cross-appeal concerns the trial court's exclusion of expert Curless from offering his opinion that Thomason's right turn on red was safe, reasonable, and not a contributing cause of the collision. Appellees argue that Curless, a mechanical engineer with three decades of experience in accident reconstruction, was eminently qualified to offer such an opinion.

The trial court excluded the testimony upon finding that whether the collision "involved a right hand turn on red" or was the result of an "aggressive passing maneuver" are matters best left to the discretion of the jury to determine based upon the evidence presented by the parties. The trial court concluded that expert opinion on these issues will not assist the trier of fact.[11] This determination was neither arbitrary nor unreasonable.

## TESTIMONY OF OFFICER HOGAN

The third issue raised in the Cross-Appeal concerns the trial court's exclusion of testimony of Officer Hogan (Hogan), a Lexington Police Officer, as to

---

[11] TR: Vol. VIII, p. 1729.

causation. The trial court found that Hogan was not properly disclosed as an expert witness based on the following:

> The Answers to Interrogatories did nothing more than state that a police officer "may" be called to testify. Defendant did not identify the person, the subject matter, or the substance on which the expert was expected to testify. Similarly, the Witness List identified Officer Hogan, but did not identify the subject matter or substance on which he is expected to testify.

Relying on this Court's decision in *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, (Ky. App. 2004), the trial court ruled that, because Hogan was not properly identified as an expert witness, he could not testify as an expert but could offer lay witness testimony regarding his observations and actions at the scene of the collision. Appellees argue that the trial court's remedy swept too broadly. We disagree.

A generalized statement outlining a broad subject matter about which an expert may testify does not sufficiently apprise the other party of the information needed to prepare for trial as contemplated and mandated by the notice requirements of CR 26.02(4)(a). *Clephas*, 168 S.W.3d at 393-94. The trial court did not abuse its discretion in limiting Hogan's testimony to lay observations and actions at the scene.

## CURATIVE INSTRUCTION

The fourth and final issue raised in the cross-appeal concerns the trial court's refusal to issue a curative instruction to the jury regarding the status of the

bus driver's right to turn right at a red light. This issue is rendered moot by our decision on the direct appeal.

## CONCLUSION

Because AGC is in part a public school with FCPS students attending and being transported to and from it, Thomason was driving a school bus which was prohibited from turning right on a red light. Because the circuit court did not instruct the jury on this specific duty, we reverse the apportionment of fault portion of the judgment for a new trial limited to that issue. A new trial on an issue provides a clean slate as to the trial of that issue with new rulings on evidence which may be presented on the retrial of that issue. *See generally Proceedings at New Trial in Civil Cases*, 58 AM. JUR. 2D *New Trial* § 396. With our rulings as to the evidentiary issues raised in this appeal of the first trial, we express no opinion on such future rulings by the circuit court.

The jury will be instructed as before on the duties of the operators but with the addition of this specific duty owed by Thomason. The jury will then be instructed that it has been determined that both operators violated their duties, and the jury is only to determine apportionment of fault. The jury will not be informed of the prior apportionment of fault, nor will they be told of any amounts of damages awarded. While the jury may wonder about damages, it will suffice for

the circuit court to inform the jury that damages have been determined and that they are not to speculate as to the amount.

ALL CONCUR.

BRIEF FOR APPELLANTS/CROSS-APPELLEES:

Megan E. Ziegman
Kendra L. Rimbert
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Barbara A. Kriz
Cael T. Henshaw
Lexington, Kentucky